IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | 4:09-CR-222 |
| JAMES NICHOLS | § § § § | |

## MEMORANDUM

The Court enters this Memorandum to memorialize the grant of the Government's request for a mistrial.

Before trial, the Court granted the Government's motion *in limine* to exclude "[a]ny discussions of plea negotiations." *See* 2/8/2011 Order, Dkt. No. 141. Specifically, the Court ruled that "[a]s the Court stated at the February 7, 2011 pretrial conference, this *in limine* item is PROVISIONALLY GRANTED: if Defendant maintains that such evidence is admissible, Defendant should provide the Court with relevant authority and seek the Court's permission." *Id.* at 7. Defendant filed a motion to reconsider, which the Court denied. *See* 4/18/2011 Order, Dkt. No. 232. The Court selected a jury on April 25, 2011, and immediately thereafter began the trial of Defendant James Nichols in the above-captioned case.

William Baca, the co-defendant and a key witness for the Government, had previously entered a plea agreement and been sentenced to a term of imprisonment of 240 months. *See* 11/2/2010 Judgment, Dkt. No. 88. Mr. Baca began testifying in the afternoon on April 26, 2011, and direct examination of Mr. Baca concluded in the morning on April 27, 2011. Mr. Baca testified that during pretrial detention, Defendant had slipped a note to Mr. Baca stating that

1

Defendant had been offered a plea agreement for a term of imprisonment of 3 years. At the end of Mr. Baca's direct examination, Defendant's counsel, Don Bailey, approached the bench and, among other things, urged that Mr. Baca's testimony about the note had opened the door to questioning about the actual plea offer made to Defendant. The following is a transcript of that entire sidebar conference (the Court Reporter has furnished the Court with a partial transcript that encompasses the relevant discussion on the record):

(At the bench, outside hearing of the jury)

THE COURT: Yes, Mr. Bailey.

MR. BAILEY: First of all, Your Honor, I request those documents that you said to be produced after he testified.

THE COURT: Okay.

MR. BAILEY: And second, based on what he just said --

MS. BATSON: What documents?

THE COURT: The documents from the investigation.

MS. BATSON: Oh --

MR. BAILEY: -- of the sister-in-law. I think based on what he just said, he needs his lawyer here. Because I think he just committed perjury based on what the transcripts are going to say. And I think he needs to be advised of that.

THE COURT: Well, then why don't -- one, we'll let you have the documents, give you a few -- I don't think it's going to take you too long to review them. They are not extensive.

And we'll discuss whether we think we need to call Mr. Henderson.

MR. BAILEY: And there's two other things, Your Honor. He just opened the door on what he understands the government had

|              |                                                                                 |
|--------------|---------------------------------------------------------------------------------|
|              | offered Mr. Nichols, as far as a plea agreement.                                |
| THE COURT:   | I thought that's what you were going to say. I'm not surprised you would take that position. I'm not agreeing that he necessarily has. We'll take that up -- |
| MR. BAILEY:  | He's also opened the door as to what his wife has said.                         |
| MS. BATSON:  | Well, Your Honor, for the three years, that was never a deal on the table.     |
| THE COURT:   | Well, let's first let the jury go to the jury room and give Mr. Bailey the documents. |
| MS. BATSON:  | Your Honor, you have my only copies of those.                                   |
| THE COURT:   | Okay. Then let's make sure that this document, the 302 with the statement attached -- |
| MS. BATSON:  | I'll make you a copy.                                                           |
| THE COURT:   | -- and what I assume are the autopsy records.                                   |
| MS. BATSON:  | Yes, I will make the copies.                                                    |
| THE COURT:   | Let's let the jury go to the jury room.                                         |

In sum, the Court noted it understood Mr. Bailey's position, but the Court did *not* vacate or relax the prior *in limine* Order excluding discussion of plea negotiations.

On cross-examination, Mr. Bailey asked Mr. Baca whether he knew that the Government had offered Defendant a plea agreement for a term of imprisonment of 13 years and that Defendant had rejected the offer. Before the Government interjected, Mr. Bailey also asked whether Mr. Baca knew that the Government had again attempted to reach a plea bargain as recently as last Saturday night. The Government requested a sidebar conference. The Court found Mr. Bailey in violation of the Court's *in limine* Order, and the Government requested a

3

mistrial, which the Court granted.[1]

Mr. Bailey asserted his belief that the Court had relaxed the *in limine* Order at the sidebar conference at the end of Mr. Baca's direct examination. At best, Mr. Bailey misunderstood the Court's comments, and by interrupting the Court before those comments were complete, Mr. Bailey prevented the Court from finishing a sentence stating that the issue would be taken up at a later time. Apparently, Mr. Bailey had interpreted the Court's comments to mean only what

---

[1] [MR. BAILEY:] Q. Okay. Did you look up Mr. Nichols on regular occasion?
A. Yeah, a couple of times. I wanted to find out what was going on with him, and the only way I could figure out how to do that was to have her [Mr. Baca's wife] check on the Internet.
Q. Two times?
A. Several, probably.
Q. Several. Why was it important to keep up with Mr. Nichols?
A. Because I didn't know what was going on with his case. Especially when he's telling me he's getting out for a three year plea deal. I -- I wanted to confirm that.
Q. Okay. Mr. Baca, are you aware that he's been offered a 13-year plea deal?
A. No.
Q. Are you aware that as late as -- as Saturday night, they were trying to get people to call him, to plea?
MS. BATSON: Your Honor, I'm going to object. If we could please approach the bench.
THE COURT: Approach the bench.
(At the bench, outside hearing of the jury)
THE COURT: Mr. Bailey, I think you're in violation of the order in limine.
MR. BAILEY: That's what I said. He opened the door.
THE COURT: I didn't rule on it.
MR. BAILEY: I'm sorry, I thought --
THE COURT: Well, I mean --
MR. BAILEY: I won't ask anymore.
THE COURT: Well, you've sort of rung the bell.
MS. BATSON: I think it's before the jury, and that is not true.
MR. BAILEY: It is true.
MS. BATSON: No, it's not.
THE COURT: Well, what are you requesting?
MS. BATSON: Well, that it be stricken from the jury. That plea negotiations are not before you.
THE COURT: Are you moving for a mistrial?
MS. BATSON: Can I speak to co-counsel?
THE COURT: Yes.
(Pause)
MS. BATSON: Yes, Your Honor, we're moving for a mistrial.
THE COURT: I'm going to grant it. But Mr. Bailey, you said -- you took the position that he opened the door. I didn't say I agreed. I said I'm not surprised you took that position. I think you've just intentionally interjected that into the -- into the -- into the case.
MR. BAILEY: Your Honor --
THE COURT: I am granting the mistrial.
MR. BAILEY: I understand.

4

he wanted to hear.  Particularly given that the Court had at least twice rejected Mr. Bailey's request to discuss plea negotiations, Mr. Bailey should have verified his understanding of the Court's comments.[2]

Mr. Bailey's violation of the *in limine* Order justified the mistrial.  First, the public has a strong interest in candid plea negotiations, and proceeding with trial after disclosure of plea negotiations to the jury might have a chilling effect on future plea negotiations in this Court and other courts.  Second, although no one can be certain what effect the information would have had on the jury's deliberations in this case, the Government would likely have suffered some unfair prejudice from Defendant's violation of the *in limine* Order that could not have been cured by any instruction to the jury.

The Court will address any appropriate action as to Mr. Bailey by separate Order.

**SIGNED this 29th day of April, 2011.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

---

[2]THE COURT: I want the court reporter to transcribe that conference at the bench, and I'll decide what to do at the appropriate time.  If any -- if I'm wrong in my comments, then obviously you will not be found in contempt, but I am confident, Mr. Bailey, I never said I'm giving you permission to go into that subject.  I think you just assumed it.
MR. BAILEY: I did assume it, Your Honor.  But you didn't say that. I --
THE COURT: Mr. Bailey, don't you think out of caution you should have made sure that I had relaxed the order?
MR. BAILEY: Yes, sir.